So now I'll call the next case, and that's the United States v. Alston Orlando LeRoy Williams. Good morning, Your Honor. I'm just waiting for the prosecutor. He's got to switch gears, I guess. Yes. Put on a different hat. The way my screen works, I won't know when Miss Mariani is there. Here she comes. Oh, here. Okay. Great. Busy, busy. Good morning, Your Honors. May it please the court. My name is Gail Stage, and I represent Mr. Williams in this particular case. As I'm sure Your Honors have seen by reading the briefs of the parties, the facts are really ugly. It's a very difficult case, but nevertheless, there were some errors made below that are important and go directly to the heart of some of the convictions and certainly to the entry of the restitution order. Mr. Williams was charged in 11 counts with essentially sex trafficking. Several women, sometimes they were juveniles, and then when they grew to be adults, that resulted in a separate count in this case. The jury acquitted Mr. Williams of all of the cases relating to women that were only trafficked, or I shouldn't say trafficked, but were only charged in the adult realm. So the jury convicted Mr. Williams of sex trafficking, minor, DL, both as a minor, and then when she became an adult, sex trafficking, another woman, GRL, sex trafficking, another woman, DR, first when she was a minor, and then when she became an adult. And he was also convicted of obstructing the enforcement of the sex trafficking laws, which aren't really relevant to the facts that we've raised in this case. It's important to note that DR chose, she was the subject of counts nine and 10. She chose not to participate in any way in this case. The parties did try to depose her, but that deposition was not admitted into evidence, and she made it clear that she didn't want anything to do with the case. And specifically, she made it clear to an investigator with the public defender's office that she wanted nothing to do with any order of restitution. In this case, the district court, I'd like to talk about the restitution order. The district court chose to go ahead and order restitution for DR in the amount of $211,000, $221,000, despite the fact that she did not file any affidavits, and she affirmatively told an investigator that she didn't want to get involved. Restitution was ordered, Your Honors, under the Trafficking Victim Protection Act, specifically 18 U.S.C. 1593, which directs district courts to order restitution for any offense under the sex trafficking chapter. And in this case, the district court held an evidentiary hearing and heard from the government and from the parties in regards to what the proper amount of restitution should be, and ultimately, the district court ordered an amount of restitution in approximately $773,000, $221,000 being money awarded to DR. The government argued that no matter whether or not DR wanted to participate in this case, that the district court was required to order restitution, and we argued that that was not the case. The district court relied upon a Second Circuit decision, United States v. Johnson, which really relates more specifically to whether or not, if a victim does not want to participate and does not want restitution, can the district court unilaterally order that the money be donated to the crime victim funds? We're not really there in this case. This case is more like a case that was argued below called Speakman. And in Speakman, the Tenth Circuit held that if a victim did not want restitution, that the district court could not order restitution because restitution is a statutory creature, and therefore, it's up to Congress to tell courts how to enter orders of restitution. Didn't Congress do that when it said the court shall enter an order of restitution? There doesn't seem to be a lot of wiggle room there to me. The Supreme Court, Your Honor, has held unequivocally that shall doesn't always mean shall. And in fact, courts and legal writers, drafters, are trying very hard to get away from using the word shall in legal drafting. Because, as Justice Ginder said in Gutierrez de Martinez v. Lomongo, that's 115 Supreme Court 227, though shall generally means must, legal writers sometimes use or misuse shall to mean should, will, or even may. Courts in virtually every English-speaking jurisdiction have held by necessity that shall means may in some context and vice versa. And what the court did in Speakman and also in another case, a Seventh Circuit case, Polinsky, the court found that the word shall gives authority to a district court to allow a victim to participate in the restitution process. But if a victim does not want to, the statute, section 363A, subsection G, specifically states that there is no requirement that a victim participate in restitution. And a case cited by the government, specifically, interestingly, it's not a published opinion, but the government, Cortez Castro, 511 Fed App 942, that case had 13 victims. It was a sex trafficking case. And out of the 13 victims, only five victims came forward and said, we want restitution. And as a result, the district court entered an order adding up those five victims restitution, and the amount was $1.2 million. So the other victims of restitution never came forward, never chose to participate. In fact, affirmatively chose not to participate. And there was no finding whatsoever by the court that, oh, well, I have to go ahead and order restitution for these other victims that are not coming forward. Yeah. Here's a question I have about this. I think this is a tricky, a tricky issue. One point of ordering restitution is to provide money to the victims. Yes. But restitution, I think we've said, and other courts have said, in the criminal context is also a form of punishment on to the offender. So doesn't it make sense to say that, you know, you have to enforce the restitution whether the victim wants it or not? Well, in United, in Paroline versus United States, that's 572 U.S. 434. The Supreme Court of the United States said that the primary goal of restitution is remedial or compensatory, although it also serves some purpose for punitive purposes. There are two other opinions. Also, the Bain opinion, 720 F. 3818 from this court, 2013, that specifically held that restitution is compensatory. It is it is something to make the victim whole and that it should not be used as punishment. So doesn't doesn't the statute, the 3664 is allowance that victims need not participate in the restitution proceedings. Isn't that a reflection of congressional recognition that sex trafficking, trafficking victims are notoriously traumatized and have a difficult time sometimes even testifying? And maybe after they've been terrorized for years are not wanting to be involved in this process. Doesn't doesn't that reflect the unique situation of sex trafficking victims? Your Honor, there are many ways that a sex trafficking victim can participate in the restitution process. Just as happened in this case with the other two victims in which the government, you know, they testified during the trial about how many hours they worked, how many days a week they work. The government then took that information and the district court was permitted to consider the trial evidence, of course. And the point is, the point is that they don't have to do that, right? I mean, there's a specific allowance in the statute that they don't have to participate in the restitution process, but it doesn't say anything to the effect of if they don't, then no restitution should be ordered. But the statute goes on to say that restitution is for the victims. And if a victim chooses not to participate, then you you have to assume that the victim doesn't want any part of the restitution, which is exactly what DR said. The district court chose to reject some of the testimony by the investigator because the investigator did not tell DR exactly how much she was entitled to get. But DR didn't want to participate in this case from the beginning, not for the trial. She wanted nothing to do with the restitution. That's not atypical in sex trafficking cases, is it? I'm sorry? That's not atypical in sex trafficking cases, is it, for the victim to not wish to participate? I don't know what would be considered typical, Your Honor. I just know that there are many ways for the government to establish the proper amount of restitution without bringing a victim into court and requiring that victim to face the person that may have traumatized them. Can I ask one additional question? Yes. So I so what exactly so I think in this case, you know, you make a good point that it's pretty clear the victim doesn't want to participate, didn't want the restitution. But if we follow your sort of logic about where the line is, I guess my point is what exactly? I mean, it seems like we're almost requiring the victim to participate because the victim either has to say, I do want the restitution or I don't want the restitution. I think Judge Grant's question is sort of saying, what if we just don't hear from the victim? Well, in this case like that. In this case, Your Honor, the defendant did present sworn testimony by its investigator that he had talked to the victim and she affirmatively denounced any request for restitution. But then there is always. But I mean, that hearsay, I mean, I guess and this may not matter for this case, but I'm just trying to figure out how this is supposed to work. I mean, so like hearsay testimony about what a victim told an investigator is like, that's that would be the standard. As long as the victim told the investigator at some point that she didn't want to participate and didn't want any restitution. Well, there may be something more, but the government was not able to get this victim to participate in any way. And I think that's Judge Grant's point, right, is that the victim doesn't have to participate and still gets the restitution. But finally, there is another mechanism. If a defendant doesn't want the restitution, they can always ask that it be given to the crime victim funds. I mean, that's the very reason that that provision is there. So there are other avenues to so-called punish the defendant in these cases, but not require restitution to those victims. It's just simply don't want it like in the Cortez Castro case. Thank you. The remainder of our briefs, your honor, for the remainder of the arguments. Ms. Mariani. Good morning again, your honors. It's very impressive, I have to say. Yeah. We'll see how you feel after the argument. At its core, as Mr. Williams counsel candidly conceded, this case is about a monster who, over the course of 13 years, destroyed the lives of multiple young women. First, by feigning romantic interest in them when they were teenagers to gain their trust. And then by savagely abusing them, manipulating them, degrading them and essentially imprisoning them in a home full of weapons. So they were prostituted every night and give him all of their earnings so he could be a dislavished lifestyle. If the court doesn't have a different preference, I'll move right to the restitution argument. Let me let me ask you one question before you do that, because that the defense counsel didn't address, which is the videos. What? So, you know, I think under normal circumstances, the videos would come in pretty easily. But here it's I just could you just address that argument? That's absolutely the district court did not use its discretion under Rule four or three and bringing in the nude images and a series of videos that Williams took of his victims and had been storing on his digital devices. Those digital files were probative in that they both showed Williams depraved dominance over the victims. And also they corroborated multiple pieces of the victim testimony. For example, the video he had of himself engaging in sexual conduct with G.R.L. shows that he had begun a sexual relationship with her when she was a child. And she had explained that was part of the unwanted conduct. If he had begun grooming her, he sent her out to prostitute. In the video where R.C. is engaged in explicit conduct, there's a taser sitting in view of the camera, and that corroborates her testimony that she engaged in unwanted sexual conduct. And Williams is directing her during this video. Well, he used a taser and sort of used that weapon to threaten and coerce her to do these acts she didn't want to do. And in addition, that evidence was not unduly prejudicial in light of multiple things. One, the other evidence in this case was utterly horrifying. You know, they heard testimony about savage physical beatings, about him tying up D.R. and throwing her in the trunk of the car while he drove around for an hour as she screamed for her life. He said he was going to kill her. He impregnated multiple victims and sent them to have abortions on their own. He starved Casey until she fell into a diabetic coma. In light of all the evidence in this case, this was certainly not the most sort of shocking or horrifying thing that came out. The jury was pre-screened by the district court during voir dire to make sure that they were not being overly prejudiced by explicit conduct. And also, the evidence in this case was certainly overwhelming. So if there was any error, this was harmless. Turning back to the restitution, there's sort of two parts of this. The district court, in the first part, step one factually, which is what Ms. Stage was sort of talking about at the end, was did D.R. actually renounce this restitution? And the district court found that she did not. And I don't think that this court should find that that was clear error for the district court to find she did not renounce her restitution. And what happened during the restitution hearing is Williams's investigator testified about telephone and then email contact he had with victim D.R. He said first that he called D.R. and vaguely only told her, quote, the government wanted to know if you wanted restitution in this case. And she responds, she really didn't want anything else to do with this case. Then an email comes, which the investigator believes is from D.R., that states only, I do not intend on seeking restitution against Wilson and Williams. He responds, sending a sworn statement saying, please execute this sworn statement. She never returns it. The investigator also says during the restitution hearing, he never told D.R. the amount of restitution the government was seeking on her behalf, which was $221,000. He never told her she didn't have to do anything to receive that restitution. Based on that testimony, I don't think it was clear error for the court to find she did not renounce. And beyond that, even if she had renounced, it would not have been an error for the court to order that restitution because by its clear statutory language, the Trafficking Victims Protection Act is mandatory and without exceptions, is not predicated on victim assent or participation, and is punitive in purpose. The victim's level of interest in this restitution, quite frankly, is irrelevant under the clear statutory language. The TVPA requires Williams to pay restitution because the statute states, as Judge Grant pointed out, the court shall order restitution. It further states, unlike the Mandatory Victim Restitution Act, this restitution is not tied to the victim's actual losses. It is tied to the defendant's ill-gotten gains. This statute is defendant-centric, not victim-centric. And it goes to sort of, as the court was pointing out, the unique and heinous harms of these trafficking cases. Congress sought to add a financial punishment to these cases to make sure the defendants did not get to keep the receipt of trafficking humans and using humans as a commodity. Although no court has yet addressed what effect victim renunciation has, if any, on the Trafficking Victims Protection Act, several other courts have discussed the effect of victim renunciation based on the mandatory restitution scheme created in the Mandatory Victim Restitution Act, which also states that restitution shall be ordered. I'll be there. Just a record question for you. I didn't hear you say this in your argument, although you may have said it and I just missed it. Sometimes these connections are not perfect. My recollection is in your brief, you said that Mr. Williams contacted D.R. while he was in prison to ensure that she… Yes. Where is that in the record? I believe that is in the pre-sentence. I believe it's in the pre-sentence investigation report. That came out at sentencing that he had done. Oh, thank you. You're welcome. And I think it also may have partially underlied some of the obstruction of justice counts. There was no citation in your brief. Okay, I apologize. If the court would like, I can certainly find it and file a letter with the court later. Yeah, that would be great. Thank you. Sure. Thank you. Okay, so… So, just to follow up on what you were saying there. So, I mean, it just sounds like your first level argument, which may be correct, is just we don't have to even address the legal issue about mandatory restitution because here we don't have a victim affirmatively saying, I don't want restitution. Correct. Okay. Yes. And there's just no clear error. Correct. The district court said she did not renounce. Absolutely. The government's position is that step one, you don't have to get into this question, but at step two, should you? The TVPA is certainly mandatory. And then going to the case law dealing with the MVRA. The 2nd, 5th, 6th, 8th, and 9th circuits have all held that a victim cannot waive the court's statutory authority to impose and collect restitution by renouncing the receipt of restitution payments under the Mandatory Victims Restitution Act. All of those courts rejected the argument advanced by Williams and put forth in Speakman, that's by the 10th circuit. But somehow the statement in the MVRA, which also exists in the TVPA, that restitution orders shall be issued in accordance with Section 3664 creates a victim renunciation exception to mandatory restitution. Specifically, Section 3664 provides no victim shall be required to participate in any phase of a restitution order. And it also provides that a victim at any time may assign for restitution payments to the crime victims. Those grants of additional authority to the victim, giving her the ability to receive restitution without doing anything further and giving her the ability to directly donate her restitution to the crime victim fund. Do you not somehow deprive the court of authority to issue restitution if the victim says she's not interested in receiving payments? Nothing in that statute circumscribes the ability of the court to redirect a payment if the victim refuses it. While the victim is the beneficiary of restitution, the victim cannot dictate whether restitution is appropriate or the amount, just as the victim cannot dictate any other part of defendant's criminal sentence. And further, the TVPA differs from the MVRA in an important way that supports this conclusion even more strongly in this situation that there is no victim renunciation exception to mandatory restitution. Unlike the MVRA, the TVPA requires restitution in the amount of the defendant's ill-gotten gains, as opposed to the victim's actual loss. Thus, it's defendant-focused and more explicitly punitive than the MVRA is. In enacting the TVPA, Congress sought to attack the greed of the trafficker and this idea of a human as a commodity. In addition, the process of deciding where to send the restitution payment is distinct from the authority to order restitution. Indeed, Section 3664 contains other provisions as it governs the enforcement of restitution orders and it grants broad powers to the courts. So far as to direct, and this is in Section M1A2, that quote, An order of restitution may be enforced by the United States by all other available and reasonable means. It also reiterates the mandatory exception-free nature of restitution in Section F1A, which states, In each order of restitution, the court shall, again the mandatory word, order restitution to each victim in the full amount of each victim's losses, as determined by the court. The statute is explicit that the court has no discretion to reduce the restitution amount that's been determined by Congress, but it does have discretion in how to collect and distribute those payments. If the court has no further questions, the government will rest on its brief and request that Williams' conviction and sentence be affirmed. Thank you. Thank you, Your Honors. I wanted to first speak in regarding the videos. It seems like the government really wants to have it both ways. The government claimed that there was ample evidence from the actual testimony of not only the three women who were the subject of the actual convictions, but also three other women in which the jury acquitted Mr. Williams. And they testified to various acts. Their testimony was cumulative. Some of them testified regarding the exact same thing. And what Mr. Williams argued was that, you know, the prescreening really went toward just simply the overall content and evidence that this jury was going to hear. And at a minimum, he asked that there be some covering up of genitals or something of that nature. If you're going to show the videos, if you're going to show the pictures, Your Honor, then at least ask the government to somehow cover up the nudity. And the court chose not even to do that. So the government argued that the defense mentioned the videos in its closing. But once the defendant lost that particular argument, you have to find a way to deal with it before the jury. And that's what the defendant chose to do. There's no question that these videos were highly prejudicial. And, you know, the prejudicial value certainly outweighed the probative value. And in regards to, again, restitution, the cases that the government is citing are really cases that, yes, it's the MVPA or the Mandatory Victim Restitution Act. But it is clear that all of the courts that have taken a look at the Mandatory Restitution Act relating to the victim protection at the Trafficking Act are worded similarly. They have similar goals. And, in fact, 1593 specifically refers back to using 363 and 363-4 as part of a way to implement 1593. So they're meant to basically rely upon each other. And it's undisputed that the victim subsection G stating that the victim doesn't have to participate can be applied to the TVPA. And so in that case, that's a distinction without a difference. And, again, the cases cited by the government are really cases in which the courts were talking about whether or not a court could unilaterally assign restitution to the crime victims. In Speakman, it's a little different. Speakman is a case in which the wife specifically said, just like in this case, that she did not want to participate. And the government offered absolutely no contradictory evidence during the restitution hearing that somehow DR was coerced into not participating. DR did not want to participate long before Mr. Williams may have reached out to her in some way. She just didn't want any part of this case. But you're not arguing, are you, that the victim's desire to not participate is the same as the victim's stated desire to not receive restitution, are you? No, I'm not. And in this case, the evidence at the restitution hearing was that she was not interested in restitution. That's an email that she sent to the investigator that he testified to. And, you know, I'm purely speculating, but in all likelihood, she didn't sign the affidavit because she just didn't want anything to do further with this case. She didn't want to put her imprimatur on anything, including signing a sworn statement. And again, just simply not informing her of the amount of the restitution shouldn't make any difference whatsoever. It's do you want restitution or don't you? There's nothing in the record to show that if she had known she was going to get $221,000 or something of that nature, that she would have changed her mind and decided to participate. That's just pure speculation on the part of the court and of the government. So we would ask that this court find that the $221,000 restitution order to DR was improper and vacate that. And we rely upon all the arguments in the rest of our brief. Thank you. Judge Martin, you're on mute. So there's a jackhammer outside my window. I thought that was disrupting the argument. Sorry about that. We have your case and appreciate the argument. It was helpful.